(30 App. Div. 346.)

BIRD v. MUTUAL UNION ASS'N OF ROCHESTER.

(Supreme Court, Appellate Division, Second Department. May 24, 1898.)

1. ASSESSMENT LIFE INSURANCE—ABANDONMENT OF BUSINESS — RIGHTS IN RESERVE FUND.
   By the provisions of the constitution, by-laws, and certificates of membership relating to the so-called "Senior Life Department" of an assessment association, only the surplus of the reserve fund above a specified figure was available for death claims, and only members persisting for a year after the completion of the fund were entitled to its benefits. Under legislative enactments, it was compelled to cease issuing new certificates in that department, and finally discontinued all its business therein. In the meantime it continued to collect assessments from one of the members, who had no knowledge of the change, and who thereafter died. The reserve fund had never reached completion. *Held*, in an action to collect the amount of his certificate, that the member became entitled to a benefit in the reserve fund, as a persistent member, and that the rights of his beneficiary were the same.

2. SAME.
   *Held*, further, that such rights as the beneficiary might possess in the reserve fund could not be secured in an action at law on the contract, but must be sought in equity.

Appeal from trial term, Kings county.

Action by Catherine Bird against the Mutual Union Association of Rochester. From a judgment entered on a verdict, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

James G. Janeway, for appellant.
Patrick Keady, for respondent.

HATCH, J.  This is an action at law, brought to recover a sum contracted to be paid by virtue of a contract of insurance.  The evidence given upon the trial is quite meager and unsatisfactory in respect of the condition of the Senior Life Branch of the defendant at the date of the death, and prior thereto, of Thomas Bird, the insured. The defendant is an assessment association, and depends for the payment of its contracts of insurance upon the sums collected from its members.  It has two classes or departments of insurance,—one known as "Class A," which is a regular life department, and one known as the "Senior Life Department."  Bird was insured in the latter department.  By the terms of his policy, or certificate of membership in such department, so far as material to the questions we are about to consider, he was required to pay monthly the sum of $1.33. Of this sum the association was authorized to retain such a per cent. as would produce an average of $4 a year upon each certificate issued, for expenses; the sum of 15 per cent. for the cost of collecting the monthly payments; and 25 per cent. to be deducted from the mortuary fund, and deposited to the credit of a reserve fund.  The creation of the latter fund was authorized by section 21 of chapter 175 of the Laws of 1883, as amended by section 6 of chapter 285 of the Laws of 1887.  This fund, by the provisions of the certificate and the conditions indorsed thereon, and of the constitution and by-laws of the association, was to be invested in United States bonds, or in first mortgages upon real estate.  It could not be used to pay death or indemnity claims of holders of certificates, except under such conditions as should be stated in the certificate of membership or in the constitution and by-laws of the association.  No member was entitled to participate in the benefit accruing from such fund, except he should have been a full beneficiary member of his department for one year after the completion of the reserve fund.  By the terms of the certificate, if there was a surplus in the mortuary fund above $25,000, and no claims chargeable thereon were due and unpaid, such surplus should be withdrawn from the mortuary fund, and be deposited in the reserve fund.  In this respect the certificate differs from the by-laws (section 14) which require that the surplus shall be $50,000 before it can be withdrawn.  The difference, however, is not material.  The only authority for the use of the reserve fund is stated in the certificate, in these words:

"Whenever the amount realized any one month for the mortuary fund is insufficient to pay a claim in full, then the increase to the completed reserve fund over $100,000 shall be credited to the mortury fund, for the payment and adjusting of said claims."

By the terms of the certificate issued to Bird, his beneficiary was to receive a sum not to exceed $1,000, "payable, as is provided by the constitution and the by-laws, from the net amount received for the

mortuary fund by the association from the second monthly payment collected from the members liable therefor, after the receipt of satisfactory proof of death." The condition indorsed upon the certificate regulating payment and its extent is found in these words:

"Should the net amount collected during any one month from the members liable therefor, for the payment of all approved death or disability claims on file, after first deducting 15 per cent. for the cost of collecting, and, second, the amount required for expenses and adjusting, and, third, 25 per cent. for the reserve fund, ever be insufficient to pay all said approved claims in full, then a just average of the amount so collected and credited to the mortuary fund for the payment of claims shall be made, and all of the said approved claims on file shall then be paid pro rata, and such pro rata payment shall be accepted by the beneficiaries as payment in full for all of said claims."

Section 4 of the constitution and section 28 of the by-laws are in all substantial respects of the same import. Under well-settled law, the certificate and its conditions, and the constitution and by-laws, furnish the contract from which the rights of the parties are to be determined. People v. Life & Reserve Ass'n, 150 N. Y. 94, 45 N. E. 8. Bird received his certificate, and became a member, on the 13th day of February, 1892. He thereafter complied with all the requirements of the association until his death, on the 29th day of June, 1895. It is admitted that thereafter all the steps essential to be taken to fasten liability upon the association in favor of the beneficiary were had and taken. The only question raised by the association relates to the amount the plaintiff is entitled to recover. The association claims that, acting in pursuance of its contract with the assured, it has collected the assessments it contracted to collect, as provided in the contract, and that it now stands ready to pay the same. It appears from the record that the defendant did, after receiving notice of the death of Bird, collect the regular mortuary assessment, and that at that time there were only 400 members in its Senior Life Department; that the assessment only realized the sum of $376.06, from which three death claims were to be paid; and that plaintiff's shares amounted to the sum of $94.49, which it offers to pay. It is quite evident that if the defendant has conducted its business in the ordinary way, and in pursuance of its constitution and by-laws, and has collected the assessment as required, it has fulfilled its contract, and cannot be required to do more. It did not guaranty to pay the policy which it issued, in its maximum amount, or in any other sum. It simply agreed to collect the monthly payment, and apply the same in discharge of the amount secured by the certificate, so far as that sum would go, after making the stipulated reductions; not, however, exceeding $1,000.

The plaintiff claims, however, that, although it may be true that an assessment was collected as required by the rules of the association, yet that she is entitled to resort to the reserve fund for the payment of her claim; and this right is claimed to arise by virtue of the following conditions: By section 210 of chapter 690 of the Laws of 1892, the legislature enacted that every policy issued by such associations should specify the sum of money which it promises to pay upon each contingency insured against, and should be obligated to the beneficiary to pay, upon the happening of the contingency insured against,

the maximum amount specified in the policy. Shortly after the passage of this law, the defendant was notified by the insurance department of the state that it could not issue any new policies under the plan of its Senior Life Department, and thereafter no new members were received in this department. Business by the association was not immediately discontinued under this department, although there is some evidence, quite meager in character, from which perhaps it could be inferred that, shortly after the passage of the act, they transferred some business and members from the Senior Life Department to Class A in the regular life department. The association, however, continued to collect the regular monthly assessment from Bird and others, after the passage of this act, and until his death. Bird had no notice of any change made in the business of the company, or of the fact that no new members were being received into this department, nor did his beneficiary have any notice until Bird's death.

The evidence is insufficient in this case to enable us to determine when the association concluded to discontinue its business under the Senior Life Department. That it has now so determined is disclosed by the record, as it appears in the evidence that all of the certificate holders in this department have surrendered their certificates, and been transferred to class A. It also appears that at the time of the last transfer of members, and when there were no longer any members in the Senior Life Department, the reserve fund credited to that department amounted to between seven and nine thousand dollars. The court below has held that this fund is available in payment of plaintiff's demand, and the jury has found that the maximum sum secured by the certificate is the plaintiff's interest therein. It is quite evident from the terms of the contract that there could be no interest of the assured in the reserve fund so long as the Senior Life Department continued as a going concern. All of the instruments constituting the contract expressly and in decisive terms excluded the payment of mortuary losses from such fund; and it was not available for any purpose until it had reached the maximum amount of $100,000, and this sum it is conceded was never attained. In addition to this, the constitution provides that no member shall participate in the reserve fund unless he shall have been a full beneficiary member for one year after the completion of the reserve fund. It could not therefore be possible for the beneficiary of Bird to reach this fund so long as the association continued to carry on its business. The act of 1892 did not purport to affect any of the contracts in existence at the time when the act was passed. No legislation could be effectual for that purpose, as the contracts were lawful when the act was passed, and so remained thereafter. While it is true that the reserve fund could not be reached by certificate holders so long as the business of the association was carried on as provided by its constitution and by-laws, it would not follow that the persistent members who had contributed to its creation could be excluded therefrom or from its benefits when the scheme which had created it failed, and the association neither could nor would carry on the business as originally contemplated;

as under such circumstances the certificate holders would not obtain what they had contingently contracted to obtain, and the association would have failed to fulfill the contract which it had made. In this respect the association would occupy a position analogous to one that had become insolvent and whose affairs were in process of liquidation. We can see no difference in principle between an association which is forced out of business by reason of its insolvency or for other matters requiring its dissolution, and where it voluntarily retires from a business it has agreed to carry on, or is forced to suspend by operation of law, so far at least as the right exists in those interested to have provision made for legal and equitable demands against such association existing at a time when it has ceased to fulfill the purpose of its creation and the contracts which it has made, or has deprived itself of the power so to do.

In Re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E. 114, the provisions of the constitution, so far as the reserve fund is concerned, are quite similar to the present case. It provided that the reserve fund should be continued until it reached $100,000, which it never did. The death fund was payable to claimants from the assessments levied and collected, and resort could not be had to the reserve fund for that purpose. In that case an action was brought for the dissolution of the company, based upon the ground that it was conducting its business fraudulently. The company levied an assessment after the action was begun. Some paid; some did not. Those who paid claimed the whole of the reserve fund. The court held that the persistent members were entitled to share in the reserve fund, but that the members who had paid the prior assessment were to be regarded as persistent, for the reason that they were justified in refusing payment upon the ground that the existence of the legal proceedings was calculated to cause a well-founded belief that further payment would increase an already certain loss. The court observed in this connection:

"The payment of an assessment under the scheme revealed by the constitution of the company would be founded upon the expectation that the company was to go on as a business enterprise, and continually seek and obtain new lives in place of those who died, and from such new lives obtain a portion of the means of payment of losses, and a proportionate security for the payment of future liabilities."

The discontinuance of the business in the present case worked precisely the same results as the court found had been worked in the foregoing case. Therein the persistent members were held to be entitled to share in the reserve fund as of the date when the proceedings were instituted which terminated in the dissolution of the company. We see no reason why the same rule is not applicable to the case before us; nor is the case changed by the fact that Bird continued to pay assessments without objection. He had no knowledge of the discontinuance in procuring new business in this department, or the determination of the association to discontinue it. He became entitled to such benefits as he might have insisted upon had he possessed full information, and his continued payment could work no estoppel upon his right to assert the claim when he

discovered the fact. Pom. Eq. Jur. § 805. And we think that his beneficiary may avail herself of any benefit which Bird might have enjoyed in his lifetime. It is, however, insisted by the respondent that she is entitled to resort to the reserve fund for the payment of the death claim, without regard to the rights of Bird to share therein, based upon the theory that, the association having failed to continue and carry on the business of this department, Bird, having contributed to the creation of such reserve fund, has an equitable right therein. In support of this view, she relies upon People v. Life & Reserve Ass'n, supra. The case does not support the contention. Therein the association issued two classes of certificates,—one known as a "Life Certificate," and the other as a "Life Reserve Certificate." Members holding the latter paid double what the members of the former paid. It was contended there, as here, that holders of the life class who had died prior to the commencement of the action were entitled to payment out of the reserve fund. This claim was rejected, and the holding of the general term, which had adopted this view, was reversed. The fund was held available to meet claims of those holding reserve life certificates who had died prior to the commencement of the action. This holding was based upon the provisions of the constitution, which provided:

"This reserve fund, together with its earnings, is for the exclusive benefit and to reward the fidelity of the old and persistent members, and to make the association sound and permanent, thereby guarantying *the payment of every member's certificate at death, to the maximum limit named therein.*"

Upon a construction of the language which we have italicized, the court held that it amounted to a guaranty among the contributors of the reserve fund that certificates of this character should be paid in full, and, as payment in full could not be made except by resort to this fund, it was to be regarded as pledged for such purpose. It was therefore held that the reserve fund should be appropriated to the payment of death claims holding reserve certificates who died before the commencement of the action, and the remainder of the fund should be distributed pro rata among the other holders of such certificates. It is therefore manifest that the court simply construed the provisions of the contract which governed the rights of the parties. In the case we are considering the same rule must be adopted; and, when we turn to the contract, we find no such provision, and no language which will enable us to reach such a result. The language of the certificate in the present case is that loss "shall only be payable, as is provided by the constitution and the by-laws, from the net amount received for the mortuary fund." And by the constitution: "No indemnity or death claim shall, however, be paid from the reserve fund, except under such conditions as shall be stated in the certificate of membership or in the by-laws." No member shall participate in the reserve fund "until said member shall have been a full beneficiary member of the said department for one year after the completion of the reserve fund." And by the by-laws: "No portion of the principal of the reserve fund, which is limited to $100,000, shall be liable for the expenses of the association, or for the payment of death or disability claims, except," etc. The exceptions re-

late to the disposition of the surplus of the fund above $100,000, and do not affect the present question. There is therefore nothing in any of the instruments which make up the contract that in any wise authorizes the application of the reserve fund, or any part of it, upon the facts here presented, to the payment of death claims. Indeed, the contract clearly shows that it was the living and persistent members that the reserve fund protected. It was not for those who had died, or their beneficiaries. The case in this respect is therefore brought within Re Equitable Reserve Fund Life Ass'n, supra.

We reach the conclusion that the plaintiff becomes entitled to share in the reserve fund for the reasons we have suggested. What her rights therein are may not be exactly stated at this time, as the record is not sufficiently full for the purpose. While she is entitled to relief in this respect, she may not have it under her present form of action. The present action is purely one at law, and states a cause of action solely upon the certificate of membership and the contract of the parties. There is not a single statement or allegation which in any wise hints of the changed conditions in the business of the Senior Life Department, nor any allegation tending to show that the plaintiff is entitled to equitable relief. While it is true that it has been held that an action may be maintained upon the policy or certificate, and a recovery had for damages, where the association had refused to levy an assessment (O'Brien v. Society, 117 N. Y. 317, 22 N. E. 954), even though an equitable action could also be maintained, yet it is manifest that where the whole subject-matter can only be reached, and full relief obtained, by the interposition of equitable power, such relief cannot be had in an action at law which alone seeks the enforcement of a specific contract. 1 Pom. Eq. Jur. § 219; Williams v. Kiernan, 25 Hun, 355.

The defendant raised this objection by motion for nonsuit and the direction of a verdict. It should have been granted, except so far as the plaintiff was entitled to recover the amount realized from the assessment. The plaintiff is not without remedy so far as her right to participate in the reserve fund is concerned. She may apply at the special term for leave to amend her complaint, and make such appropriate allegations as will avail to invoke the equitable powers of the court. In view of the fact that the knowledge of the change in business was possessed by the defendant, and not by the plaintiff, she may reasonably expect liberal treatment upon her motion. We are not able, in any view, to support the judgment which has been rendered.

The judgment should be reversed, with costs to abide the event. All concur.